IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE ENDANGERED SPECIES ACT SECTION 4 DEADLINE LITIGATION | **Misc. Action No. 10-377 (EGS)** **MDL Docket No. 2165** |
| This Document Relates To: *Center for Biological Diversity v. Salazar, et al.,* No. 10-cv-230 | SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.     INTRODUCTION

1.      This lawsuit concerns the Secretary of the Interior's failure to act on 20 citizen petitions to list 92 species as endangered or threatened pursuant to the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*:  (1) the llanero coquí (*Eleutherodactylus juanariveroi*); (2); the striped newt (*Notophthalmus perstriatus*); (3) the Puerto Rican harlequin butterfly (*Atlantea tulita*); (4) the Berry Cave salamander (*Gyrinophilus gulolineatus*); (5) the Oklahoma grass pink orchid (*Calopogon oklahomensis*); (6) the Bay Springs salamander (*Plethodon ainsworthi*); (7) the Ozark chinquapin (*Castanea ozarkensis*); (8) the cactus ferruginous pygmy-owl (*Glaucidium ridgwayi cactorum*); (9) the Mount Charleston blue butterfly (*Icaricia shata charlestonensis*); (10) the California golden trout (*Oncorhynchus mykiss aguabonita*); (11) the Mojave fringe-toed lizard (*Uma scoparia*); (12) the western gull-billed tern (*Sterna nilotica vanrossemi*); (13) the Mohave ground squirrel (*Spermophilus Mohavensis*); (14) 42 species of Great Basin springsnails (*Pyrgulopsis sp. and Tryonia sp.*); (15) the Tehachapi slender salamander (*Batrachoseps stebbinsi*); (16) the dusky tree vole (*Arborimus longicaudus silvicola*); (17) the Lake Sammamish kokanee (*Oncorhynchus nerka*); (18) the black-footed albatross (*Phoebastria nigripes*); (19) 32

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Page 1

species of Pacific Northwest mollusks (*phylum Mollusca*); and (20) the plains bison ((*Bison bison bison*) (collectively the "Petitioned Species"). Each of these species is at risk of extinction due to habitat degradation and destruction, climate change, and other threats. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") challenges the Secretary of the Interior KEN SALAZAR (the "Secretary") and the UNITED STATES FISH AND WILDLIFE SERVICE ("FWS") over violations of section 4 of the Endangered Species Act ("ESA") for the Secretary's failure to make a 90-day finding and/or a 12-month finding on the petitions to list these species as threatened or endangered under the ESA, 16 U.S.C. §§ 1533(b)(3)(B).

2.      The Center brings this lawsuit (1) to enforce the ESA's mandatory 12-month deadline to make a finding on the petitions to list the llanero coquí, the cactus ferruginous pygmy-owl, the Mount Charleston blue butterfly, the California golden trout, the Mojave fringe-toed lizard, the Tehachapi slender salamander, the dusky tree vole, the Lake Sammamish kokanee, the black-footed albatross, the Ozark chinquapin, the striped newt, the Berry Cave salamander, the Puerto Rican harlequin butterfly, the western gull-billed tern, and the Mohave ground squirrel; (2) to enforce the ESA's mandatory 90-day finding deadline on the petitions to list the Oklahoma grass pink orchid, the Bay Springs salamander, the plains bison, the 42 species of Great Basin springsnails, and the 32 species of Pacific Northwest mollusks; and (3) to compel the Secretary to determine whether listing the Petitioned Species as threatened or endangered is warranted. 16 U.S.C. § 1553(b)(3)(B). The Center seeks an order declaring that Defendants' failure to comply with their statutorily mandated duty to make a finding on each petition is a violation of the ESA and the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). The Center further seeks an order requiring the Secretary make the required findings on the petitions by dates certain.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Page 2

## II.     JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and

(g) (action arising under the ESA and citizen suit provision), 28 U.S.C. §§ 1331 (federal

question), 2201 (declaratory relief), and 2202 (injunctive relief), and 5 U.S.C. § 702 (right of

review under the APA).

4.      As required by 16 U.S.C. § 1540(g), the Center provided the Secretary with

written notice of the violations alleged herein more than 60 days prior to commencement of this

action.  Despite such notice, the Secretary has failed to remedy the ESA violations.

5.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C.

§ 1540(g)(3)(A) because Defendants reside in the district and a substantial part of the events

giving rise to the Center's claims occurred in this district.

## III.     PARTIES

6.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3)

corporation with offices in Washington D.C. and elsewhere in the United States.  The Center

works through science, law and policy to secure a future for all species hovering on the brink of

extinction.   The Center's members and staff are actively involved in species and habitat

protection throughout the United States, including protection of the Petitioned Species.   The

Center has over 42,000 members throughout the United States and the world.  The Center brings

this action on its own behalf and on behalf of its adversely affected members and staff.

7.      The Center's members and staff include numerous individuals with a broad

range of scientific, professional, educational, recreational, aesthetic, moral and spiritual interests

in the Petitioned Species.  In addition, the Center's members and staff use and enjoy, on a

continuous and ongoing basis, the habitat of the Petitioned Species for biological, scientific,

research, educational, conservational, recreational and aesthetic purposes. The Center's members and staff observe and attempt to observe the Petitioned Species and intend to continue doing so. The Center's enjoyment of the Petitioned Species and use and enjoyment of their habitat are dependent on the existence of healthy and sustainable populations of the Petitioned Species in the wild. Concerned that the Petitioned Species are at serious risk of extinction due to global warming and other impacts, members of the public including the Center submitted the petitions at issue herein to list these species as endangered or threatened under the ESA. Unless the Petitioned Species are promptly protected under the ESA, they are likely to continue to decline and become extinct. Therefore, the Center's members and staff are injured by the Secretary's failure to issue timely findings in response to the petitions as required by the ESA. These injuries are actual, concrete, and imminent. The Secretary's failure to comply with the ESA's deadlines for processing the petitions deprives the Petitioned Species of statutory protection that is vitally necessary to their survival. The relief requested will fully redress the injury.

8.    Defendant KEN SALAZAR is the Secretary of the Interior and is sued in his official capacity. Mr. Salazar has the ultimate responsibility to enforce and implement the ESA provisions.

9.    Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency within the Department of the Interior. Through delegation of authority from the Secretary, FWS administers and implements the ESA for terrestrial species. FWS has responsibility under the ESA over the species that are the subject of this action. FWS has failed to take required action with regard to the petitions, and has failed to meet the statutorily mandated deadlines for processing the petitions to list the Petitioned Species.

## IV.    LEGAL BACKGROUND

**A.    The Endangered Species Act**

10.    Congress enacted the ESA "to provide a program for the conservation of … endangered species and threatened species" and "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  A "species" includes "any subspecies of fish, wildlife, or plants" or "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. § 1532(16).  The statute defines a species as "endangered" if it is in "danger of extinction throughout all or a significant portion of its range" and "threatened" if it is "likely to become an endangered species within the foreseeable future …."  16 U.S.C. §§ 1532(6), (20).

11.    Once a species is listed by the Secretary as threatened or endangered, various statutory protections apply.  For example, section 7 of the ESA requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of a species' critical habitat.  16 U.S.C. § 1536(a)(2).  Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species or incidentally taking listed species without a permit from the Secretary.  16 U.S.C. §§ 1538(a)(1)(B), 1539.  Other provisions of the ESA require the Secretary to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the Secretary to acquire land for the protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

12.    To ensure the timely protection of imperiled species, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or

threatened.   The process includes mandatory, non-discretionary, deadlines that the Secretary must meet, so that species in need of protection do not languish in administrative purgatory.   The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

13.      Upon receipt of a listing petition, the Secretary, through FWS, must "to the maximum extent practicable" within 90 days make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A).  If FWS finds that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

14.      If, however, FWS determines that a petition does present substantial information indicating that listing may be warranted, FWS must conduct a full scientific review of the species' status.  16 U.S.C. § 1533(b)(3)(A).  Upon completion of this status review, and within 12 months from the date that the Secretary received the petition, FWS must make one of three findings: (1) listing is not warranted; (2) listing is warranted; or (3) listing is warranted, but is presently precluded by other pending proposals for listing species, provided certain circumstances are present.  16 U.S.C. § 1533(b)(3)(B).  The 12-month deadline for making this finding is mandatory.  There is no mechanism by which the Secretary can extend the deadline for making his 12-month finding.

15.      If FWS's 12-month finding concludes that listing is warranted, FWS must then publish notice of the proposed regulation to list the species as threatened or endangered in the Federal Register for public comment.  16 U.S.C. § 1533(b)(3)(B)(ii).  Within one year of the publication of the proposed regulation, FWS must render a final determination on the proposal.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Page 6

16 U.S.C. § 1533(b)(6)(A).   At such time, FWS must either list the species, withdraw the proposed listing rule or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information.   16 U.S.C. §§ 1533(b)(6)(A)(i), 1533(b)(6)(B)(i).

16. It is critical that the Secretary and FWS follow scrupulously the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species until it is formally listed as either endangered or threatened.

## V.     FACTUAL BACKGROUND

### A.     The Llanero Coquí

17. The llanero coquí is a tree frog endemic to Puerto Rico.   The llanero coquí population is threatened by climate change, habitat loss, application of pesticides and herbicides, residential development, disease and predation, and pollution from landfills and developments.

18. On May 22, 2007, FWS received a formal petition to list the llanero coquí as threatened or endangered under the Act and designate critical habitat.   An amended petition was submitted on January 22, 2009 including updated scientific and technical data.   On June 25, 2009, FWS published a positive 90-day finding on the petition in the Federal Register.   74 Fed. Reg. 32510 (June 25, 2009).   FWS determined the petition contained substantial scientific or commercial information indicating that listing this species may be warranted.   The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than May 22, 2008.   The Secretary has failed to make this 12-month finding and is therefore in violation of the ESA.

19. By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding

on the petition as required by the ESA.  The Center advised the Secretary that it intended to file

suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the

12-month finding.

20.     If Defendants do not act to process the petition, the llanero coquí will continue

toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**B.     The Striped Newt**

21.     The striped newt is endemic to southern Georgia and northern Florida.  The

striped newt is threatened by degradation and destruction of its preferred native longleaf pine

ecosystem habitat by development, agriculture, and plantations of other tree species.  It is also

threatened by littoral zone destruction due to off-road vehicle ("ORV") use, as well as climate

change.  Surveys conducted over the past 15 years have demonstrated a severe loss of known

breeding sites in both Florida and Georgia.

22.     On July 14, 2008, FWS received a formal petition to list the striped newt as

threatened or endangered under the ESA.  The 90-day finding was therefore due on October 14,

2008.

23.     On March 23, 2010, FWS published a positive 90-day finding on the petition in

the Federal Register.  75 Fed. Reg. 13720 (March 23, 2010).  The 90-day petition finding

triggered a requirement that the Secretary make a 12-month finding on the petition no later than

October 14, 2009.

24.     By letter dated June 16, 2010, the Center notified the Secretary that he had

violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding

on the petition as required by the ESA.  The Center advised the Secretary that it intended to file

suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

25.     If Defendants do not act to process the petition, the striped newt will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**C.     The Puerto Rican Harlequin Butterfly**

26.     The Puerto Rican harlequin butterfly is endemic to Puerto Rico.  It is threatened by habitat degradation and destruction.

27.     On February 25, 2009, FWS received a formal petition to list the Puerto Rican harlequin butterfly as threatened or endangered under the ESA.  The 90-day finding was therefore due on May 26, 2009.

28.     On April 26, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 21568 (April 26, 2010).  The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than February 25, 2010.

29.     By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

30.     If Defendants do not act to process the petition, the Puerto Rican harlequin butterfly will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**D.     The Berry Cave Salamander**

31.     The Berry Cave salamander is found only in caves in three counties in Tennessee. It is threatened by habitat degradation and destruction.

32.     On January 22, 2003, FWS received a petition to list the Berry Cave salamander as threatened or endangered under the ESA.  The 90-day finding was due April 22, 2003.

33.     On March 18, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 13068 (March 18, 2010).  The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than January 22, 2004.

34.     By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

35.     If Defendants do not act to process the petition, the Berry Cave salamander will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**E.     The Oklahoma Grass Pink Orchid**

36.     The Oklahoma grass pink orchid is endemic to the United States.  Though historically native to 17 states, the grass pink is now found only in Arkansas, Illinois, Louisiana, Mississippi, Missouri, Oklahoma, Texas, and Wisconsin.  The Oklahoma grass pink is threatened by habitat loss from expanding agricultural and forestry land use, fire suppression, and urbanization.

37.     On May 28, 2008 FWS received a formal petition to list the Oklahoma grass pink orchid as threatened or endangered under the ESA.  The 90-day finding was therefore due on August 28, 2008.

38.     By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 90-day finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  On August 24, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 51969 (August 24, 2010).

39.     If Defendants do not act to process the petition, the Oklahoma grass pink will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**F.     The Bay Springs Salamander**

40.     The Bay Springs salamander is limited to two known populations in caves in Tennessee.  It is threatened by habitat loss due to development, road construction, and pollution.

41.     On February 6, 2006, FWS received a formal petition to list the Bay Springs salamander as threatened or endangered under the ESA.  The 90-day finding was therefore due on May 2, 2006.

42.     By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 90-day finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 90-day finding.

43.     If Defendants do not act to process the petition, the Bay Springs salamander will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

## G.     The Ozark Chinquapin

44.     The Ozark chinquapin is a shrub or small tree that is characterized by a rounded, yellow-green canopy that is endemic to the Ozark Plateau region of Oklahoma, Arkansas, and Missouri at 500 to 2800 feet and threatened by the chestnut blight, habitat destruction, and climate change.

45.     On January 6, 2004, FWS received a formal petition to list the Ozark chinquapin as threatened or endangered under the ESA.  The 90-day finding was therefore due on April 6, 2004.

46.     On June 1, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 30313 (June 1, 2010).  The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than April 6, 2005.  The Secretary has failed to make this 12-month finding and is therefore in violation of the ESA.

47.     By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

48.     If Defendants do not act to process the petition, the Ozark chinquapin will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

## H.     The Cactus Ferruginous Pygmy-Owl

49.     Ferruginous pygmy-owls are small (14 to 18 centimeters long), reddish-brown, daylight-hunting owls found in the United States, Mexico, Central America, and South America. Until recently, all ferruginous pygmy-owls in North, Central, and South America were classified as a single species.  Recent genetic analyses indicate, however, that populations in North and Central America and in South America should be recognized as a distinct species (*Glaucidium ridgwayi* and *Glaucidium brasilianum*, respectively).  In addition, these genetic analyses suggest a further division of the North and Central American species into two subspecies – one in Arizona and the Mexican states of Sonora and Sinaloa (the western subspecies *G. Ridgwayi cactorum*), and a second in the southern tip of Texas and the remainder of Mexico and Central America.

50.     On March 10, 1997, in response to a petition submitted by members and staff of the Center, the FWS listed the Arizona DPS of the cactus ferruginous pygmy-owl as an endangered species.  62 Fed. Reg. 10730.  FWS subsequently designated critical habitat for the listed cactus ferruginous pygmy-owl DPS.

51.     In 2001, the National Association of Home Builders and other industry and trade organizations challenged the validity of listing the Arizona DPS of the cactus ferruginous pygmy-owl as an endangered species.  *National Ass'n of Home Builders* v. *Norton*, Case No. Civ. 00–0903–PHX–SRB.  The Center intervened in this action as a defendant to uphold the listing.  On September 21, 2001, the district court for the District of Arizona upheld the listing, but FWS voluntarily remanded the critical habitat designation, which the industry plaintiffs had also challenged.

52.     On November 27, 2002, FWS published a new proposed critical habitat designation for the Arizona DPS of the cactus ferruginous pygmy-owl, and on January 9, 2003,

FWS published notice of the availability of a draft recovery plan for the cactus ferruginous pygmy-owl.  Neither the new critical habitat designation nor the recovery plan were ever finalized.

53.     On August 19, 2003, the Ninth Circuit Court of Appeals reversed the district court's judgment regarding listing of the Arizona cactus ferruginous pygmy-owl DPS, holding that although the Arizona pygmy-owl population met the "discreteness" criterion for listing a DPS according to the FWS DPS policy, FWS failed to meet the second criterion of the DPS policy because it did not articulate a rational basis for finding that the population was "significant."  *National Ass'n of Home Builders v. Norton*, 340 F.3d. 835, 840 (9th Cir. 2003).  FWS subsequently removed the cactus ferruginous pygmy-owl from the list of endangered species.  71 Fed. Reg. 19452 (April 14, 2006).

54.     Based on new genetic and taxonomic information that post-dated the original listing (and the Ninth Circuit's decision in *National Ass'n of Home Builders v. Norton*), on March 15, 2007, the Center submitted a new petition to list (1) the Arizona DPS of the cactus ferruginous pygmy-owl, (2) the Sonoran Desert DPS of the cactus ferruginous pygmy-owl, or (3) the entire western subspecies of the cactus ferruginous pygmy-owl as an endangered or threatened species.  The Center's petition presented the new genetic and taxonomic information indicating that both the Arizona and Sonoran Desert populations meet the "discreteness" and "significance" criteria of the Service's DPS policy, and thus qualify as a DPS.  The Center's petition further presented information that the Sonoran Desert DPS of the cactus ferruginous pygmy-owl qualifies as an endangered or threatened species due to urban sprawl, invasive non-native species, livestock grazing, and other factors.  The Secretary received this petition on or about March 20, 2007.

55.     On June 2, 2008, the Secretary issued a 90-day petition finding, which concluded that the Center's petition presented substantial scientific or commercial information indicating that the listing the entire cactus ferruginous pygmy-owl may be warranted.  73 Fed. Reg. 31418, 314424.

56.     By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, well over 12 months after receiving the Center's petition, the Secretary has failed to make the mandatory 12-month finding as to whether the listing of the cactus ferruginous pygmy-owl is warranted.

57.     If Defendants do not act to process the petition, the cactus ferruginous pygmy-owl will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

I.      **Mount Charleston Blue Butterfly**

58.     A petition to the Secretary requesting listing of the Mount Charleston blue butterfly as threatened or endangered under the ESA was received by the Secretary on October 20, 2005.  The Mount Charleston blue butterfly is a distinctive subspecies of the wider ranging Shasta blue butterfly and is observed only at high elevations in the Spring Mountains, located approximately 25 miles (40 kilometers (km)) west of Las Vegas in Clark County, Nevada. Habitat destruction and modification are primarily threats to the Mount Charleston blue butterfly.

59.     The Secretary has missed each deadline provided by the ESA for processing the petition.  On May 30, 2007, 19 months after the petition for listing on the Mount Charleston blue butterfly was submitted, the Secretary issued a 90-day finding.  Notice of 90-day Petition

Finding, 72 Fed. Reg. 29933 (May 30, 2007).  The 90-day finding determined that "the petition presents substantial scientific or commercial information indicating that listing the Mr. Charleston blue butterfly may be warranted." *Id*.

60.     On October 20, 2006, the deadline for a 12-month finding for the petition passed. By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

61.     The Secretary has yet to issue a 12-month finding for the petition to list the Mount Charleston blue butterfly as threatened or endangered under the ESA.

62.     If Defendants do not act to process the petition and protect the Mount Charleston blue butterfly, the species will continue its spiral towards extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**J.     California Golden Trout**

63.     A petition to the Secretary requesting listing of the California golden trout as threatened or endangered under the ESA was received by the Secretary on October 23, 2000. The California golden trout is the State Fish of California and native only to two high-altitude watersheds in California's rugged Sierra Nevada Mountains.  Threats to the California golden trout include habitat degradation and hybridization with non-native rainbow trout.

64.     The Secretary has missed each deadline provided by the ESA for processing the California golden trout listing petition.  On September 20, 2002, close to two years after the petition was submitted, the Secretary issued a 90-day finding.  67 Fed. Reg. 59241 (Sept. 20,

2002).   The 90-day finding determined that "the petition presents substantial information indicating that the listing of the California golden trout may be warranted." *Id.*

65.    On October 16, 2001 the deadline for a 12-month finding for the petition to list the California golden trout passed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

66.    The Secretary has yet to issue a 12-month finding for the petition to list the California golden trout as threatened or endangered under the ESA.

67.    If Defendants do not act to process the petition, the California golden trout will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**K.    Mojave Fringe-Toed Lizard**

68.    A petition to the Secretary requesting listing of the Amargosa River population of the Mojave fringe-toed lizard, which occurs in California's Mojave Desert in and adjacent to Death Valley National Park, as threatened or endangered under the ESA was received by the Secretary on April 10, 2006.  Threats to the Amargosa River population of the Mojave fringe-toed lizard include habitat destruction and modification by extensive off-highway vehicle use.

69.    The Secretary has missed each deadline provided by the ESA for processing the petition to list the Amargosa River population of the Mojave fringe-toed lizard.  On January 10, 2008, 17 months after the petition was submitted, the Secretary issued a 90-day finding.  73 Fed. Reg. 1855 (Jan. 10, 2008).  The 90-day finding determined that "the petition presents substantial scientific or commercial information indicating that listing [the Amargosa River population of the Mojave fringe-toed lizard] may be warranted." *Id.*

70.     On April 10, 2007, the deadline for a 12-month finding for the petition passed. By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

71.     The Secretary has yet to issue a 12-month finding for the petition to list the Armargosa River population of the Mojave fringe-toed lizard as threatened or endangered under the ESA.

72.     If Defendants do not act to process the petition, the Mojave fringe-toed lizard will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**L.     Western Gull-Billed Tern**

73.     The western gull-billed tern, a medium sized migratory seabird also known as van Rossem's gull-billed tern, is one of two subspecies of gull-billed terns found in North America.

74.     On June 8, 2009, FWS received a petition to list the western gull-billed tern as threatened or endangered throughout its range under the ESA.

75.     On June 9, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 32728 (June 9, 2010).  The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than June 8, 2010.

76.     By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file

suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

77.     If Defendants do not act to process the petition, the western gull-billed tern will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**M.     Mohave ground squirrel**

78.     The Mohave ground squirrel found in the northwest part of the Mojave Desert in Inyo, Kern, Los Angeles, and San Bernardino Counties, California.  The Mohave ground squirrel is threatened by destruction and degradation of habitat from development, military activities, livestock grazing and ORV use.

79.     A petition to the Secretary requesting listing of the Mohave ground squirrel as threatened or endangered under the ESA was received by the Secretary on September 5, 2005.

80.     On April 27, 2010, FWS published a positive 90-day finding on the petition in the Federal Register.  75 Fed. Reg. 22063 (April 27, 2010).  The 90-day petition finding triggered a requirement that the Secretary make a 12-month finding on the petition no later than September 5, 2005.

81.     By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.  To date, the Secretary has yet to issue the 12-month finding.

82.     If Defendants do not act to process the petition, the Mohave ground squirrel will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**N.     42 Species of Great Basin Springsnails**

83.     A petition to the Secretary requesting listing of 42 species of Great Basin springsnails as threatened or endangered under the ESA was received by the Secretary on February 17, 2009.  These springsnails, which depend on desert springs in California, Nevada and Utah for survival, are threatened by groundwater withdrawal, spring diversion, and livestock grazing.

84.     The Secretary has missed the deadlines provided by the ESA for processing the petition to list 42 species of Great Basin springsnails.  On May 17, 2009 the deadline for a 90-day finding for the petition passed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 90-day finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

85.     The Secretary has yet to issue a 90-day finding for the petition to list 42 species of Great Basin Springsnails as threatened or endangered under the ESA.

86.     If Defendants do not act to process the petition, the springsnails will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**O.     Tehachapi Slender Salamander**

87.     A petition to the Secretary requesting listing of the Tehachapi slender salamander as threatened or endangered under the ESA was received by the Secretary on February 28, 2006. The Tehachapi slender salamander is believed to have only two populations, one in Caliente Canyon in the southern Sierras and the other in the Tehachapi Mountains of California.  The salamander is threatened by development, road construction, mining, livestock grazing, and flood-control projects.

88.   The Secretary has missed each deadline provided by the ESA for processing the petition to list the Tehachapi slender salamander.  On April 22, 2009, almost three years after the petition was submitted, the Secretary issued a 90-day finding.  Notice of 90-day Petition Finding and Initiation of Status Review, 74 Fed. Reg. 18336 (Apr. 22, 2009).  The 90-day finding determined that "the petition presents substantial scientific or commercial information indicating that listing the Tehachapi slender salamander may be warranted." *Id*.

89.   On February 28, 2007, the deadline for a 12-month finding for the petition to list the Tehachapi slender salamander passed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

90.   The Secretary has yet to issue a 12-month finding for the petition to list the Tehachapi slender salamander as threatened or endangered under the ESA.

91.   If Defendants do not act to process the petition, the Tehachapi slender salamander will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**P.   Dusky Tree Vole**

92.   On June 22, 2007, a petition to list the dusky tree vole (*Arborimus longicaudus silvicola*) was received by the Secretary.  The dusky tree vole is a subspecies of the red tree vole, an old growth-dependent species that occurs in the humid coniferous forests of the Cascade Mountains in western Oregon and northwestern California and is considered to have the narrowest niche of all arboreal mammals in the Pacific Northwest.  The dusky tree vole is a small, typically brownish-red rodent that is less than eight inches long and two ounces in weight.

Due to their highly-specific habitat requirements, low mobility, poor dispersal capability, and low reproductive rates, tree vole populations are vulnerable to the loss and fragmentation of old-growth forests through logging, fire, and development.

93.     On October 28, 2008, FWS issued a 90-day finding that the petition to list the dusky tree vole under the ESA presented "substantial information" indicating that listing under the ESA "may be warranted" for one of three entities: the dusky tree vole as a subspecies of the red tree vole, a north Oregon coast population of the red tree vole, or the red tree vole in a significant portion of its range.  73 Fed. Reg. 63919 (Oct. 28, 2008).  This finding was based on FWS's findings that the dusky tree vole's existence is threatened by the loss and fragmentation of old-growth forest habitat from logging, development, and roads, inadequate protection from threats by existing regulatory mechanisms, and other factors such as fire severity, small populations size, and genetic isolation.  *Id*. at 63926.

94.     On June 22, 2008, the deadline for a 12-month finding for the petition to list the dusky tree vole lapsed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

95.     The Secretary has yet to issue a 12-month finding for the petition to list the dusky tree vole as threatened or endangered under the ESA.

96.     If Defendants do not act to process the petition, the dusky tree vole will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**Q.     Lake Sammamish Kokanee**

97.    A petition to list the Lake Sammamish kokanee (*Oncorhynchus nerka*) as threatened or endangered under the ESA was received by the Secretary on July 9, 2007.  The kokanee is a non-anadromous member of the salmon family that spawns in freshwater habitats and migrates to lakes, where it remains for about four years until maturity before returning to natal freshwater streams to spawn and die.  The larger Lake Washington-Sammamish watershed is one of five watersheds in Washington that support native populations of resident kokanee, but this population has declined significantly.

98.    On May 6, 2008, FWS issued a 90-day finding that listing of the Lake Sammamish kokanee population as a DPS under the ESA may be warranted due to threats to its existence – in particular, the significant alteration of the Sammamish River system, degradation of its water quality, and alteration of its hydrology as well as the lack of adequate existing regulatory mechanisms and competition with nonnative hatchery salmonids.  73 Fed. Reg. 24919 (May 6, 2008).

99.    On July 9, 2008 the deadline for a 12-month finding for the petition to list the Lake Sammamish kokanee passed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

100.    The Secretary has yet to issue a 12-month finding for the petition to list the Lake Sammamish kokanee as threatened or endangered under the ESA.

101.    If Defendants do not act to process the petition, the Black Lake Sammamish kokanee will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

R.      **Black-Footed Albatross**

102.     A petition requesting listing of the black-footed albatross (*Phoebastria nigripes*) as threatened or endangered under the ESA was received by the Secretary on October 1, 2004. The black-footed albatross is a large seabird with long wings, gray-black body, and white ring around face at base of bill.   The black-footed albatross nests almost exclusively in the Northwestern Hawaiian Islands, with a small population nesting in Japan.   The most serious threat to the species is from industrial long-line fishing, which often results in albatross morality when the albatross become entangled and drown on baited hooks set to catch swordfish and tuna. It is estimated that as many as 14,000 black-footed albatross are killed by long-line fishing each year.

103.     On October 9, 2007, over three years after the petition was submitted, FWS issued a 90-day finding which determined that "the petition presents substantial scientific or commercial information indicating that listing the black-footed albatross may be warranted." 72 Fed. Reg. 57278 (Oct. 9, 2007).

104.     On October 1, 2005 the deadline for a 12-month finding for the petition to list the black-footed albatross lapsed.   By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.   The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

105.     The Secretary has yet to issue a 12-month finding for the petition to list the black-footed albatross as threatened or endangered under the ESA.

106.     If Defendants do not act to process the petition, the Black-footed albatross will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**S.      32 Species of Pacific Northwest Mollusks**

107.     On March 13, 2008, a petition was submitted to the Secretary to list 32 species of mollusks (*phylum Mollusca*) native to the Pacific Northwest as threatened or endangered under the ESA, including 15 springsnails, two river snails, 13 land snails, and two slugs.  The petition stated that the mollusks' existence is threatened by logging, grazing, wildfire, controlled burning, road construction and maintenance, pesticide application, agriculture, recreation, urbanization, mining, the spread of invasive species, global climate change, water pollution, dams, diversions, and stream destruction and development.  The petition also stated that these threats are magnified because many of the species have severely limited distributions and certain other characteristics, such as low fecundity and high annual population turnover, that make them intrinsically vulnerable to extinction.

108.     On June 11, 2008, the deadline for a 90-day finding for the petition to list the 32 mollusk species passed.  By letter dated December 14, 2009, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 90-day finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

109.     The Secretary has yet to issue a 90-day finding for the petition to list the 32 mollusk species as threatened or endangered under the ESA.

110.     If Defendants do not act to process the petition, the 32 mollusk species will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

**T.      Plains Bison**

111.     The plains bison is the iconic North American grazing mammal that was nearly extirpated in the Nineteenth Century.  While bison populations have remained stable in recent

years, it is estimated that wild plains bison occupy less than one percent of their historic range, and the subspecies continues to face threats due to the loss of habitat, introgression with cattle genes, loss of genetic diversity, domestication and loss of wildness, and other factors.

112.    A petition to the Secretary requesting listing of the plains bison as threatened under the ESA was received by the Secretary on or about June 19, 2009.

113.    The Secretary has missed the deadlines provided by the ESA for processing the petition to list the plains bison.  On or about September 19, 2009 the deadline for a 90-day finding for the petition passed.  By letter dated June 16, 2010, the Center notified the Secretary that he had violated section 4 of the ESA, 15 U.S.C. § 1533(b)(3)(B), by failing to make a 90-day finding on the petition as required by the ESA.  The Center advised the Secretary that it intended to file suit to enforce the ESA's mandatory listing deadlines.

114.    The Secretary has yet to issue a 90-day finding for the petition to list the plains bison as threatened under the ESA.

115.    If Defendants do not act to process the petition, the plains bison will continue toward extinction.  There is no legal excuse for Defendants' inexplicable failure to act.

## VI.    CLAIMS FOR RELIEF

**First Claim for Relief:**           **Failure To Make Timely 12-Month Finding On Petition To List The Llanero Coquí**

116.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

117.    The Secretary's failure to make a timely 12-month finding on the petition to list the llanero coquí as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).  The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of

the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Second Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Striped Newt**

118.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

119.    The Secretary's failure to make a timely 12-month finding on the petition to list the striped newt as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Third Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Puerto Rican Harlequin Butterfly**

120.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

121.    The Secretary's failure to make a timely 12-month finding on the petition to list the Puerto Rican harlequin butterfly as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Fourth Claim for Relief:**                **Failure To Make Timely 12-Month Finding On Petition To List The Berry Cave Salamander**

122.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

123.    The Secretary's failure to make a timely 12-month finding on the petition to list the Berry Cave salamander as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Fifth Claim for Relief:**                **Failure To Make Timely 90-Day Finding On Petition To List The Oklahoma Grass Pink Orchid**

124.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

125.    The Secretary's failure to make a timely 90-day finding on the petition to list the Oklahoma grass pink as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Sixth Claim for Relief:**          **Failure To Make Timely 90-Day Finding On Petition To List The Bay Springs Salamander**

126.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

127.   The Secretary's failure to make a timely 90-day finding on the petition to list the Bay Springs salamander as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Seventh Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Ozark Chinquapin**

128.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

129.   The Secretary's failure to make a timely 12-month finding on the petition to list the Ozark chinquapin as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Eighth Claim for Relief:**     **Failure To Make Timely 12-Month Finding On Petition To List The Cactus Ferruginous Pygmy-Owl**

130.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

131.    The Secretary's failure to make a timely 12-month finding on the Center's petition to list the cactus ferruginous pygmy-owl as an endangered or threatened species violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Ninth Claim for Relief:**     **Failure To Make Timely 12-Month Finding On Petition To List The Mount Charleston Blue Butterfly**

132.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

133.    The Secretary's failure to make a timely 12-month finding on the petition to list the Mount Charleston blue butterfly as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Tenth Claim for Relief:**                    **Failure To Make Timely 12-Month Finding On Petition To List The California Golden Trout**

134.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

135.    The Secretary's failure to make a timely 12-month finding on the petition to list the California golden trout as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Eleventh Claim for Relief:**               **Failure To Make Timely 12-Month Finding On Petition To List The Mojave Fringe-Toed Lizard**

136.    The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

137.    The Secretary's failure to make a timely 12-month finding on the petition to list the Mojave fringe-toed lizard as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B);  1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Twelfth Claim for Relief:**      **Failure To Make Timely 12-Month Finding On Petition To List The Western Gull-Billed Tern**

138.     The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

139.     The Secretary's failure to make a timely 12-month finding on the petition to list the western gull-billed tern as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Thirteenth Claim for Relief:**      **Failure To Make Timely 12-Month Finding On Petition To List The Mohave Ground Squirrel**

140.     The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

141.     The Secretary's failure to make a timely 12-month finding on the petition to list the Mohave ground squirrel as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Fourteenth Claim for Relief:**      **Failure To Make Timely 90-Day Finding On Petition To List 42 Species Of Great Basin Springsnails**

142.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

143.   The Secretary's failure to make a timely 90-day finding on the petition to list 42 species of Great Basin springsnails as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(A); 1540(g).  The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Fifteenth Claim for Relief:**      **Failure To Make Timely 12-Month Finding On Petition To List The Tehachapi Slender Salamander**

144.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

145.   The Secretary's failure to make a timely 12-month finding on the petition to list the Tehachapi slender salamander as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).  The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Sixteenth Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Dusky Tree Vole**

146.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

147.   The Secretary's failure to make a timely 12-month finding on the petition to list the dusky tree vole as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Seventeenth Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Lake Sammamish Kokanee**

148.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

149.   The Secretary's failure to make a timely 12-month finding on the petition to list the Lake Sammamish kokanee as threatened or endangered violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in

accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Eighteenth Claim for Relief:**          **Failure To Make Timely 12-Month Finding On Petition To List The Black-Footed Albatross**

150.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

151.   The Secretary's failure to make a timely 12-month finding on the petition to list the black-footed albatross as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B) & 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

**Nineteenth Claim for Relief:**          **Failure To Make Timely 90-Day Finding On Petition To List 32 Pacific Northwest Mollusk Species**

152.   The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

153.   The Secretary's failure to make a timely 90-day finding on the petition to list the 32 species of Pacific Northwest mollusks as threatened or endangered violates the ESA.   16 U.S.C. §§ 1533(b)(3)(B); 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).   Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of

discretion, not in accordance with law, and a failure to observe proper procedure under the APA,

5 U.S.C. § 706(2).

**Twentieth Claim for Relief:**        <u>**Failure To Make Timely 90-Day Finding On Petition To List The Plains Bison**</u>

154.  The Center re-alleges, as if fully set forth herein, each and every allegation alleged in the preceding paragraphs.

155.  The Secretary's failure to make a timely 90-day finding on the petition to list the plains bison as threatened violates the ESA.  16 U.S.C. §§ 1533(b)(3)(B); 1540(g).  The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1).  Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

## VII.  PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that this Court enter judgment providing the following relief:

1.  Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the llanero coquí as threatened or endangered;

2.  Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the llanero coquí by a date certain;

3.  Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petitions to list the striped newt as threatened

or endangered;

4.      Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the striped newt by a date certain;

5.      Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petitions to list the Puerto Rican harlequin butterfly as threatened or endangered;

6.      Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Puerto Rican harlequin butterfly by a date certain;

7.      Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petitions to list the Berry Cave salamander as threatened or endangered;

8.      Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Berry Cave salamander by a date certain;

9.      Declare that Defendants are in violation of the ESA and/or the APA by failing to issue a timely 90-day finding in response to the petition to list the Oklahoma grass pink orchid as threatened or endangered;

10.      Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 90-day finding on the petition to list the Oklahoma grass pink orchid by a date certain and a 12-month finding by a date certain thereafter;

11.      Declare that Defendants are in violation of the ESA and/or the APA by failing to

issue a timely 90-day finding in response to the petitions to list the Bay Springs salamander as threatened or endangered;

12.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 90-day finding on the petition to list the Bay Springs salamander by a date certain and a 12-month finding by a date certain thereafter;

13.     Declare that Defendants are in violation of the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petitions to list the Ozark chinquapin as threatened or endangered;

14.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Ozark chinquapin by a date certain;

15.     Declare that Defendants violated the ESA and/or APA by failing to issue a timely 12-month finding in response to the petition to list the cactus ferruginous pygmy-owl as threatened or endangered;

16.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the cactus ferruginous pygmy-owl by a date certain;

17.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the Mount Charleston blue butterfly as threatened or endangered;

18.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Mount Charleston blue butterfly by a date certain;

19.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the California golden trout as threatened or endangered;

20.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the California golden trout by a date certain;

21.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the Mojave fringe-toed lizard as threatened or endangered;

22.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Mojave fringe-toed lizard by a date certain;

23.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the western gull-billed tern as threatened or endangered;

24.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the western gull-billed tern by a date certain;

25.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the Mohave ground squirrel as threatened or endangered;

26.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Mohave ground squirrel by a date certain;

27.     Declare that Defendants are in violation of the ESA and/or the APA by failing to issue a timely 90-day finding in response to the petitions to list 42 species of Great Basin springsnails as threatened or endangered;

28.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 90-day finding on the petition to list 42 species of Great Basin springsnails by a date certain and a 12-month finding by a date certain thereafter;

29.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the Tehachapi slender salamander as threatened or endangered;

30.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Tehachapi slender salamander by a date certain;

31.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the dusky tree vole as threatened or endangered;

32.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the dusky tree vole by a date certain;

33.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the Lake Sammamish kokanee

as threatened or endangered;

34.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Lake Sammamish kokanee by a date certain;

35.     Declare that Defendants are in violation of the ESA and/or the APA for failing to issue a timely 12-month finding in response to the petition to list the black-footed albatross as threatened or endangered;

36.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the black-footed albatross by a date certain;

37.     Declare that Defendants are in violation of the ESA and/or the APA by failing to issue a timely 90-day finding in response to the petitions to list 32 species of Pacific Northwest mollusks as threatened or endangered;

38.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 90-day finding on the petition to list 32 species of Pacific Northwest mollusks by a date certain and a 12-month finding by a date certain thereafter;

39.     Declare that Defendants are in violation of the ESA and/or the APA by failing to issue a timely 90-day finding in response to the petitions to list the plains bison as threatened;

40.     Provide preliminary and permanent injunctive relief compelling Defendants to publish in the Federal Register a 90-day finding on the petition to list the plains bison by a date certain and a 12-month finding by a date certain thereafter;

41.     Make such additional judicial determinations and enter such additional orders as may be necessary to effectuate the foregoing;

42.     Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

43.     Award the Center its costs of litigation, including reasonable attorney's fees; and

44.     Grant the Center such other relief as the Court deems just and proper.


Dated:  September 13, 2010.                    Respectfully submitted,


/s/ John Buse_____
John Buse (*pro hac vice*, CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: (323) 533-4416
Facsimile: (415) 436-9683
Email: jbuse@biologicaldiversity.org


Amy Atwood (D.C. Bar No. 470258)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, Oregon  97211-0374
Phone: (503) 283-5474
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2010, I electronically filed the foregoing SECOND

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF with the

Clerk of the Court using the CM/ECF system which will send notification of this filing to all

attorneys of record.

s/ John Buse
John Buse (*pro hac vice*, CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, CA 94104
Telephone: (323) 533-4416
Email: jbuse@biologicaldiversity.org

Attorney for Plaintiff Center for Biological Diversity