EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| IN RE ENDANGERED SPECIES ACT ) | |
| SECTION 4 DEADLINE LITIGATION ) | |
| _____ ) | Misc. Action No. 10-377 (EGS) |
| ) | MDL Docket No. 2165 |
| This Document Relates To: ) | |
| *Center for Biological Diversity v. Salazar*, ) | |
| 10-cv-0230 ) | |
| _____ ) | |

## STIPULATED SETTLEMENT AGREEMENT

This Stipulated Settlement Agreement ("Agreement") is entered into by and between the

Plaintiff Center for Biological Diversity ("Center") and Defendants Ken Salazar, in his official

capacity as Secretary of the Interior; Rowan Gould, in his official capacity as Acting Director of

the U.S. Fish and Wildlife Service ("Service" or "FWS"); and the Service (collectively,

"Defendants"), (collectively, the "Parties"), who state as follows:

## A.  DEFINITIONS

1.      For purposes of this Agreement, the terms "ESA" or the "Act" refer to the Endangered

Species Act.  16 U.S.C. §§ 1531-1544.

2.      For purposes of this Agreement, the terms "species" and "critical habitat" refer to the

same terms as defined in the ESA.  16 U.S.C. § 1532(5)(A) and 1532(16).

3.      For purposes of this Agreement, the term "90-day finding" refers to an initial finding that

shall be made by the Service, to the maximum extent practicable, within 90 days after receiving a

petition   as to "whether the petition presents substantial scientific or commercial information

1

indicating that the petitioned action may be warranted" under the ESA.   16 U.S.C. § 1533(b)(3)(A), (b)(3)(D)(i).

4.      For purposes of this Agreement, the term "12-month finding" refers to a finding that shall be made by the Service within 12 months after receiving a petition that is found to present substantial information indicating the petitioned action may be warranted under the ESA as to whether the petitioned action is not warranted, warranted, or warranted but precluded by higher priority actions ("warranted-but-precluded"), or a determination as to how to proceed with a petitioned critical habitat revision that the Service has determined may be warranted.   16 U.S.C. § 1533(b)(3)(B), 1533(b)(3)(D)(ii).

5.      For purposes of this Agreement, the term "not-warranted finding" refers to a 12-month finding that a petitioned action is not warranted.   16 U.S.C. § 1533(b)(3)(B)(i).

6.      For purposes of this Agreement, the term "Proposed Rule" refers to the publication in the Federal Register of "a general notice and the complete text of a proposed regulation to implement" the listing of one or more species, provided the Service finds that the listing is warranted.   16 U.S.C. § 1533(b)(3)(B)(ii), (4)-(5).

7.      For purposes of this Agreement, the term "CNOR" refers to the Candidate Notice of Review, which contains the Service's required annual findings on species with warranted-but-precluded findings and species that the Service has determined to be candidates for listing.

8.      For purposes of this Agreement, the term "Listing Program" refers to the Service's program for considering the eligibility of species for listing pursuant to Section 4 of the ESA and for designating their critical habitats.   16 U.S.C. § 1533.

9.      For purposes of this Agreement, the term "SAC" refers to the Center's Second Amended

Complaint, filed on September 20, 2010.  Docket ("Dkt.") 18.

10.     For purposes of this Agreement, the term "32 species of Pacific Northwest mollusks"

refers to the 32 species described in the Center's listing petition dated March 13, 2008.

11.     For purposes of this Agreement, the term "42 species of Great Basin springsnails" refers

to the 42 species described in the Center's listing petition dated February 17, 2009.

12.     For purposes of this Agreement, the term "403 southeast aquatic species" refers to the

404 species (with the exception of Alabama shad) described in the Center's listing petition dated

April 20, 2010.

13.     For purposes of this Agreement, the terms "Service" or "FWS" also refer to the Secretary

of the Interior or any other persons in their official capacities as employees of the Service.

14.     For purposes of this Agreement, the terms "deadline suit," "deadline suits," or "deadline

litigation" refer to any lawsuit against the Service to enforce the statutory deadlines in 16 U.S.C.

§ 1533(a)(3)(A)(i), (b)(3)(A)-(B), and (D), and 16 U.S.C. § 1533(b)(6)(A).  "Deadline suit,"

"deadline suits," or "deadline litigation" does not include a Section 4 merits challenge as defined

in paragraph A(16) of this Agreement.

15.     For purposes of this Agreement, the term "finding" refers to either of the following: (a) a

90-day finding as defined in paragraph A(3); or (b) a 12-month finding as defined in paragraph

A(4).

16.     For purposes of this Agreement, the term "Section 4 merits challenge" refers to any lawsuit against the Service challenging the merits of Defendants' decisions regarding a species or its critical habitat.  Section 4 merits challenges include, but are not limited to, the following: (a) any challenge to the Service's determination, pursuant to 16 U.S.C. § 1533(b)(3)(A), that a petition to list a species as endangered or threatened does not present substantial scientific or commercial information indicating that such listing may be warranted; (b) any challenge to a "not warranted" finding by the Service, pursuant to 16 U.S.C. § 1533(b)(3)(B); (c) any challenge to the Service's withdrawal, pursuant to 16 U.S.C. § 1533(b)(6)(A)(i)(IV), of a Proposed Rule or a proposed critical habitat determination; (d) any challenge to the Service's determination, pursuant to 16 U.S.C. § 1533(b)(1)(A), that designation of critical habitat is not prudent; (e) any challenge, pursuant to 16 U.S.C. § 1533(b)(2), to the adequacy or substance of a final critical habitat determination made by the Service; or (f) any challenge, pursuant to 16 U.S.C. § 1533(b)(1), to the adequacy or substance of a final listing determination made by the Service.

## B.  TERMS OF AGREEMENT

1.     Defendants shall submit the following petition findings to the Federal Register no later than the end of Fiscal Year ("FY") 2011:

   a.     12-month findings for the black-footed albatross, California golden trout, dusky tree vole, Lake Sammamish kokanee, llanero coqui, Mojave fringe-toed lizard, Mojave ground squirrel, Oklahoma grass pink, Ozark chinquapin, Tehachapi slender salamander, and western gull-billed tern; and

   b.     90-day findings for 32 species of Pacific Northwest mollusks, 42 species of Great Basin springsnails, and the 403 southeast aquatic species.

2.      Defendants shall submit a 90-day finding to the Federal Register for the San Bernardino
flying squirrel no later than the end of FY 2012.

3.      Defendants shall submit a Proposed Rule or a not-warranted finding to the Federal
Register for the following species no later than the end of the specified Fiscal Year:

      a.      Cactus ferruginous pygmy owl (FY 2011);

      b.      Acuna cactus, Jollyville Plateau salamander, Mexican wolf, Miami blue butterfly,
         Mt. Charleston blue butterfly, spring pygmy sunfish, and wekiu bug (FY 2012);

      c.      Ashy storm-petrel, bi-state (Mono Basin) distinct population segment ("DPS") of
         greater sage-grouse, Dakota skipper, eastern small-footed bat, Kittlitz's murrelet,
         Mexican garter snake, mountain yellow-legged frog, North American wolverine,
         northern long-eared bat, Oregon spotted frog, red knot, Rosemont talussnail,
         yellow-billed cuckoo, and Yosemite toad (FY 2013);

      d.      Arctic grayling, black pine snake, least chub, Rio Grande cutthroat trout, Tucson
         shovelnose snake, west coast fisher DPS, and yellow-billed loon (FY 2014);

      e.      Eastern massasauga, greater sage-grouse range-wide (including Columbia DPS),
         headwater chub, Kentucky arrow darter, New England cottontail, roundtail chub,
         and southern Idaho ground squirrel (FY 2015);

      f.      Relict leopard frog, and Tahoe yellow cress (FY 2016); and

      g.      Pacific walrus (FY 2017).

4.    Defendants shall submit a Proposed Rule or a not-warranted finding to the Federal Register for the 'i'iwi no later than the end of FY 2016, provided the Service finds that the listing petition contains substantial information indicating the petitioned action may be warranted.

5.    For each Proposed Rule submitted to the Federal Register in accordance with paragraphs B(3) and B(4), Defendants shall make a final listing determination in accordance with the statutory deadlines provided in 16 U.S.C. § 1533(b)(6)(A)-(B).

6.    The Center shall not oppose the separate Stipulated Settlement Agreement entered into by and between WildEarth Guardians ("Guardians") and Defendants on May 10, 2011, Dkt. 31-1, which resolves Guardians' consolidated cases in this multidistrict proceeding.  If the Court does not approve the Stipulated Settlement Agreement with Guardians for any reason, the Service may terminate this Agreement.

7.    Pursuant to Federal Rule of Civil Procedure 41(a)(1), the claims in the Center's SAC shall be dismissed with prejudice.

8.    The Center shall file either an unopposed motion to voluntarily dismiss, or a stipulation of dismissal of, the following case with prejudice:  *Center for Biological Diversity v. Salazar*, Civ. No. 10-4861 (N.D. Cal.) (ashy storm-petrel).

9.    The Center shall use its best efforts to obtain the agreement of its co-plaintiffs in each of the following cases to file a joint motion to dismiss the specific claims in these cases with prejudice:  *Center for Biological Diversity v. Salazar*, Civ. No. 3:10-cv-01501-JCS (N.D. Cal.) (west coast fisher DPS); *Biodiversity Conservation Alliance v. Kempthorne*, Civ. No. 04-2026 (D.D.C.) (multiple candidate species in 2006 CNOR); *Western Watersheds Project v. Salazar*,

Civ. No. 4:10-229 (D. Idaho) (greater sage-grouse).  For any such case(s) in which the Center's co-plaintiffs agree to do so, the parties to such case(s) shall file a joint motion(s) to dismiss the specific claims in such case(s) with prejudice.  If the Center is unable to obtain the agreement of its co-plaintiffs in any of these cases to such a joint motion to dismiss, the Center shall move to withdraw from the case, citing to and attaching this Agreement, in lieu of filing a joint motion to dismiss the case with prejudice, and Defendants may, without the Center, file a motion to dismiss the specific claims in the case(s) with prejudice.  Defendants reserve the right to assert all available legal defenses in each of the cases identified in this paragraph.  The Parties agree that modification of this Agreement is appropriate if one or more of the cases identified in this paragraph is not dismissed in its entirety with prejudice.

10.     Both Parties agree that making listing determinations for candidate species is important.  The Service recognizes that, to accomplish this objective, the Service must be able to devote more of its available resources to substantive listing and critical habitat determinations for candidate species.  To that end, if the Center:

     a.     From the date that this Agreement is filed with the Court to the end of FY 2011, files one or more deadline suits or challenges to warranted-but-precluded findings against the Service seeking any finding, listing determination, or critical habitat determination;

     b.     From the date that this Agreement is filed with the Court to the end of FY 2011, obtains from any deadline suit or challenge to a warranted-but-precluded finding a remedy requiring the Service to make an additional finding, listing determination, or critical habitat determination in FY 2011;

c.      In a single fiscal year from FY 2012 through FY 2016, files one or more deadline suits or challenges to warranted-but-precluded findings against the Service seeking, in total, findings, listing determinations, or critical habitat determinations for more than 10 species; or

d.      In a single fiscal year from FY 2012 through FY 2016, obtains from any deadline suit, challenge to any warranted-but-precluded finding, or from deadline suits and challenges to warranted-but-precluded findings combined, a total of more than three remedies requiring the Service to make additional findings, listing determinations, or critical habitat determinations prior to April 1, 2017,

then the dates specified in paragraphs B(1) through B(3) of this Agreement (with the exception of the dates for the greater sage-grouse range-wide (including Columbia DPS), west coast fisher DPS, and Pacific walrus) shall be replaced with the date FY 2016.  For purposes of subsections (b) and (d) of this paragraph, a "remedy" shall mean a stipulated settlement agreement or judicially enforceable order requiring the Service to make any finding, listing determination, or critical habitat determination for a species.  Such remedy is obtained as of the date of the parties' filing of a stipulated settlement agreement with a court, or, if remedy is contested, the date of a court order.  Notwithstanding the above provisions, any deadline litigation filed by the Center against the Service regarding overdue deadlines for the reclassification of the loggerhead sea turtle from threatened to endangered shall count as one deadline lawsuit or one remedy for purposes of this paragraph.  Except for the first two sentences of this paragraph, nothing in this paragraph shall be considered evidence in this or any other judicial proceeding other than a proceeding regarding approval, implementation, modification, or termination of this Agreement. Further, nothing in this paragraph shall be construed as precluding the parties from separately

seeking modification, enforcement, or termination of the terms in this Agreement in accordance with section C of this Agreement.

## C.  MODIFICATION AND DISPUTE RESOLUTION

1.      Any of the provisions of this Agreement may be modified by mutual agreement and written stipulation between the Parties, filed with and approved by the Court, or upon written motion filed by one of the Parties pursuant to Federal Rule of Civil Procedure 60(b) and granted by the Court for good cause shown.

2.      The Parties acknowledge that the Service has entered into this Agreement based on the Service's projection that it will have sufficient resources to fulfill the requirements of the Agreement.  In entering into this Agreement, one of the Service's assumptions is that resources available to the Listing Program in each fiscal year the Agreement is in effect will not be substantially less than the FY 2011 level.  If, at any time before all the requirements of this Agreement have been satisfied, the Service concludes that it will not have sufficient resources to complete the actions required by this Agreement and the actions required by other court orders or court-approved settlement agreements, the Service may seek the Center's consent to modify this Agreement through a written stipulation filed with the Court in accordance with paragraphs C(1) and C(3).  If the Service is unable to obtain the Center's consent, the Service may seek to modify the terms of this Agreement in accordance with paragraph C(4).

3.      In the event of any dispute arising out of or relating to this Agreement, including any dispute in which a Party believes that the other Party has failed to comply with any right or obligation of this Agreement or any dispute concerning a proposed modification of the Agreement, the Party raising the dispute ("Disputing Party") shall provide the other Party with

written notice that identifies the nature of the dispute, and, if applicable, any proposed modification(s).  Any dispute arising out of or relating to this Agreement shall in the first instance be the subject of direct conference and negotiation between the Parties.  Within 14 days after receiving written notice of a dispute (or additional time if the Parties agree), the Parties will confer and attempt to resolve the dispute.  If the Parties are not able to resolve the dispute within 14 days after their first conference (or additional time if the Parties agree), a Party may seek enforcement or modification pursuant to paragraph C(4), or termination of the Agreement under paragraph C(5).  In carrying out their obligations to confer pursuant to this paragraph, if both Parties consent, the Parties may initiate non-binding mediation, if appropriate.  If the Parties request the assistance of a mediator, any costs incurred by a mediator shall be borne by the Party seeking modification, enforcement, or termination, unless the Parties agree to address such costs differently.

4.      In the event that the Parties are unable to resolve a dispute regarding the Parties' rights or obligations pursuant to this Agreement or regarding a proposed modification, a Party may file with the Court a motion to enforce the Agreement and/or to compel performance, or a motion to modify this Agreement in accordance with Federal Rule of Civil Procedure 60(b).  This Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court.  Any modification shall be effective upon the filing and entry of an order granting such a motion with the Court.  The terms of this Agreement are not intended to be enforceable by any person or entity other than the Parties hereto and the Court.

5.      The Parties may terminate this Agreement by mutual agreement and written stipulation between the Parties, filed with and approved by the Court, in which case termination shall be effective upon the filing with, and approval of a Stipulation to Terminate Agreement by, the

Court.  The Agreement may also be terminated upon written motion filed by one of the Parties pursuant to Federal Rule of Civil Procedure 60(b) and granted by the Court for good cause shown.

### D.  GENERAL PROVISIONS

1.      Except as noted in paragraph B(10), this Agreement may be cited by the Parties in any deadline litigation or warranted-but-precluded litigation, as well as in the remedy phase of any Section 4 merits challenge.

2.      Nothing in this Agreement shall be construed as precluding Defendants from establishing schedules for the listing of endangered and threatened species that are earlier than those set forth in this Agreement.

3.      This Agreement requires Defendants to take the actions described above in paragraphs B(1) through B(5).  The Agreement shall not (and shall not be construed to) limit or modify the discretion accorded to Defendants by the ESA, the Administrative Procedure Act ("APA"), or general principles of administrative law with respect to the procedures to be followed in making any determination required herein or as to the substance of any such determination.  No provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that Defendants take any action in contravention of the ESA, the APA, or any other law or regulation, either substantive or procedural.

4.      Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Defendants are obligated to expend or pay any funds exceeding those available, or take any

action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other appropriations law.

5.      The Parties agree that this Agreement was negotiated in good faith and it constitutes a settlement of claims that were vigorously contested, denied, and disputed by the Parties.  By entering into this Agreement, the Parties do not waive any claim or defense.

6.      Nothing in this Agreement will bar Plaintiff from bringing any Section 4 merits challenge with regard to any species.  Nothing in this Agreement will bar Defendants from defending its decisions in such cases.

7.      Defendants agree that the Center is the prevailing party with regard to its claims in this consolidated multidistrict litigation related to the allegedly untimely issuance of 90-day and 12-month petition findings identified in the Center's SAC, and thus are entitled to an award of reasonable attorneys' fees and costs pursuant to section 11(g)(4) of the ESA, in its consolidated case.  16 U.S.C. § 1540(g)(4).  The Parties will attempt to reach agreement as to the appropriate amount of the fee recovery.  If they are unable to do so, the Plaintiff will file an application with the Court for the recovery of fees and costs within 60 days of the approval of this Agreement by the Court.

8.      The undersigned representatives of each Party certify that they are fully authorized by the Party or Parties they represent to execute this Agreement.

9.      For any subsequent communications between the Parties undertaken in accordance with this Agreement, the Parties will contact the following individuals or their successors using the appropriate contact information below:

For Plaintiff:

Noah Greenwald
Endangered Species Program Director
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Phone: (503) 283-5474
Fax: (503) 283-5528

For Defendants:

Chief, Division of Conservation and Classification
and
Chief, Office of ESA Litigation
Endangered Species Program
United States Fish and Wildlife Service
4401 North Fairfax Drive, Room 420
Arlington, VA  22203
Phone:  (703) 358-2171
Fax:  (703) 358-1735

10.      Notwithstanding the dismissal of this action, the Parties hereby stipulate and respectfully

request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement

and to resolve any motions to modify such terms.  *See Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375 (1994).


11.      This Agreement is effective as of the date it is approved by the Court.


Dated:  July 12, 2011                              Respectfully submitted,

                                                   IGNACIA S. MORENO
                                                   Assistant Attorney General
                                                   SETH M. BARSKY
                                                   Section Chief
                                                   KRISTEN L. GUSTAFSON
                                                   Assistant Section Chief
                                                   MEREDITH L. FLAX
                                                   Senior Trial Attorney

*/s/ Clifford E. Stevens, Jr.*
CLIFFORD E. STEVENS, JR.
Trial Attorney
H. HUBERT YANG
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
601 D Street, N.W.
Washington, DC 20004
Tel: (202) 305-0210
Fax: (202) 305-0275
E-mail: clifford.stevens@usdoj.gov
E-mail: hubert.yang@usdoj.gov

*Attorneys for Defendants*


JOHN BUSE
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (323) 533-4416
E-mail: jbuse@biologicaldiversity.org


*/s/ Amy Atwood*
AMY ATWOOD
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel: (503) 283-5474
Fax: (503) 283-5528
E-mail: atwood@biologicaldiversity.org

*Attorneys for Plaintiff*
*Center for Biological Diversity*