UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE ENDANGERED SPECIES ACT
SECTION 4 DEADLINE LITIGATION

---

This Document Relates To:
ALL CASES

---

Misc. Action No. 10-377 (EGS)
MDL Docket No. 2165

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiffs Center for Biological Diversity ("CBD") and
WildEarth Guardians ("Guardians") filed the actions that comprise
this Multi-District Litigation ("MDL").  Plaintiffs bring these
actions to compel the Fish and Wildlife Service ("FWS") and the
Secretary of the Interior (collectively "federal defendants") to
comply with statutory deadlines when making the determination
whether to list hundreds of species as endangered or threatened
under the Endangered Species Act ("ESA").  These consolidated
cases - which are now on the verge of settlement - do not seek to
require FWS to reach any particular substantive decision on the
petitions to list the species.  Rather, plaintiffs only seek, and
the settlements only provide, that the FWS be required to make a
determination in a somewhat timely fashion.

Pending before the Court is a motion to intervene as of
right, or, in the alternative, for permissive intervention filed
by Safari Club International ("SCI").  SCI requests intervention

so that it may oppose the settlement, because its members hunt three of the species at issue: the greater sage grouse, the New England cottontail, and the lesser prairie-chicken.[1]  SCI argues that the outcome of the FWS listing determinations – *i.e.*, if the FWS ultimately decides to list the species as threatened or endangered - may result in their inability to hunt the species.

This Court previously faced a nearly identical motion to intervene in this MDL proceeding.  *In re Endangered Species Act Section 4 Deadline Litigation*, 270 F.R.D. 1 (D.D.C. 2010) (hereinafter "*In re ESA Litig.*").  In that motion, TRC, a corporation with an interest in seeing a particular species *not* be listed moved to intervene, arguing that a decision to list the species would injure its use of its property and its business operations.  The Court denied the motion to intervene because TRC failed to demonstrate Article III standing.  It held TRC's "alleged injury is based entirely on the potential substantive outcome of the FWS's listing determination for the [species at issue], which is not before this Court."  *Id.* at 5.  Because the MDL is limited to the procedural issue of FWS' alleged failures to timely complete steps in the listing process, the Court found that it would not be in a position to rule on the substantive

---

[1]     SCI initially included a fourth species, the plains bison; however, FWS has already concluded that listing of this species is not warranted. Fed. Defs.' Opp'n to Mot. to Intervene at 6 & n.2.

2

issue of whether a species should or should not ultimately be listed as threatened or endangered.  Accordingly, the Court concluded that TRC's claims of injury were neither caused by, nor redressable in, the MDL.  *Id.*

SCI's motion to intervene is indistinguishable from TRC's: it is based solely on the potential substantive outcome of FWS' endangerment determinations.  That substantive outcome was not before the Court in 2010, and it is not before the Court now.  Therefore, upon consideration of SCI's motion, the responses and replies thereto, the relevant law and the record as a whole, and for the reasons stated herein, SCI's motion to intervene is **DENIED**.[2]

## II.  BACKGROUND

### A.  Statutory Background

The ESA was enacted for the purpose of providing "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] ... a program for the conservation of such endangered species and threatened species[.]" 16 U.S.C. § 1531(b).  The ESA requires the Secretary of the Interior to publish and maintain a list of all species

---

[2]  Because the Court finds this issue may be resolved based on the parties' written submissions, the Court has exercised its discretion to decline SCI's request for a hearing.  SCI Reply at 5.

that have been designated as threatened or endangered.[3] *Id.* §
1533(c).  Species are added to and removed from this list through
a notice and comment process, either on the initiative of the
Secretary or as a result of a petition submitted by an
"interested person." *Id.* §§ 1533(b)(1), (3), (5).

The ESA establishes specific procedural steps for making a
listing determination. Within 90 days of receiving a listing
petition, the United States Fish and Wildlife Service ("FWS")
must "[t]o the maximum extent practicable" determine whether "the
petition presents substantial scientific or commercial
information indicating that the petitioned action may be
warranted." 16 U.S.C. § 1533(b)(3)(A). If the FWS determines on
this basis that listing may be warranted, it must promptly
commence a review of the species' status. *Id.*  Within 12 months
of receiving the listing petition, the agency must have completed
its review and must make a finding that listing is either: (1)
not warranted; (2) warranted, but precluded by higher listing
priorities; or (3) warranted, in which case the FWS must publish
a proposed rule to list the species in the Federal Register.  *Id.*

---

[3]  The Secretary of the Interior (for terrestrial species)
and the Secretary of Commerce (for marine species) are
responsible for making listing determinations. 16 U.S.C. §§
1532(15), 1533(a)(2). The Secretaries have delegated their
responsibilities under the Act to the FWS, in the case of
Interior, and to the National Marine Fisheries Service, in the
case of Commerce.

§ 1533(b)(3)(B).  The ESA permits no exceptions to this 12-month mandatory deadline.

For any species that FWS determines falls into the second category - that is, a species that may warrant listing, but is precluded by higher priority actions - the species is considered a candidate for listing under the ESA.  *See* 2010 Candidate Notice of Review ("CNOR"), 75 Fed. Reg. 69,222 (Nov. 10, 2010) ("A candidate species is one for which we have on file sufficient information on biological vulnerability and threats to support a proposal to list as endangered or threatened, but for which preparation of a proposal is precluded by higher priority listing actions.")  Petitions for warranted-but-precluded species are treated as petitions that present substantial scientific or commercial information indicating that the petitioned action may be warranted.  *Id.* § 1533(b)(3)(C)(i).  The ESA requires the FWS to "implement a system to monitor effectively the status" of warranted but precluded species and to "prevent a significant risk to the well being of any such species." *Id.* § 1533(b)(3)(C)(iii).  FWS therefore must review the list of candidate species annually, make one of the required findings - warranted, not warranted, or warranted but precluded - and publish its findings in the CNORs published annually in the Federal Register.

**B.    Factual and Procedural Background**

This MDL arises out of a number of lawsuits challenging the FWS' failure to make timely findings, mandated by statutory deadlines, for hundreds of species petitioned for listing by Guardians and CBD.  Specifically, the underlying lawsuits challenge FWS' failure to make the 90-day and 12-month findings required by the ESA.  16 U.S.C. §§ 1533(b)(3)(A), (B).

In September 2010, the parties entered into mediation to try to resolve plaintiffs' claims.  On May 10, 2011, Guardians and the federal defendants filed a proposed settlement agreement in Guardians' underlying cases.  On July 12, 2011, CBD and the federal defendants filed a separate proposed settlement agreement in CBD's underlying cases.  The settlements address FWS' failures to meet the specific deadlines challenged by the plaintiffs in the underlying cases, and provide additional relief as well.  In particular, the settlements set a schedule for FWS to resolve the backlog of candidate (*i.e.* warranted-but-precluded) species. Guardians and Fed. Defs. Joint Motion for Approval of Settlement, Doc. 31 at 17; CBD and Fed. Defs. Joint Motion for Approval, Doc. 42 at 4.  Because the ESA provides no statutory deadline for the FWS to make final determinations regarding candidate species, the list of these species has grown to 251, many of which have been on the candidate list for more than 10 years.  2010 CNOR, 75 Fed.

Reg. 69,222.  While on the candidate list, the species are afforded no protection under the ESA.

The settlement agreements do not dictate that FWS reach any particular substantive outcome on any petition or listing determination.  The agreements only require the FWS to make *a* determination – to publish either proposed listing rules or not-warranted findings - for the backlog of species on the 2010 candidate list by the end of fiscal year 2017.  Guardians and Fed. Defs. Stipulated Settlement Agreement ("Guardians Agreement"), Doc. 31-1 at 6; CBD and Fed. Defs. Stipulated Settlement Agreement ("CBD Agreement"), Doc. 42-1 at 5-6.

On June 27, 2011, two months after Guardians and the federal defendants filed their settlement agreement and two weeks after CBD and the federal defendants announced they had reached a tentative agreement, SCI moved to intervene as a defendant in the consolidated cases.  SCI seeks to oppose the settlements because they require FWS to take action on three species which have been designated as warranted-but-precluded: the greater sage grouse, the New England cottontail, and the lesser prairie chicken. Motion to Intervene at 2.  This motion is now ripe for determination by the Court.

## III. ANALYSIS.

SCI moves to intervene in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the

alternative, by permission of the Court pursuant to Federal Rule of Civil Procedure 24(b).  The Court addresses each request in turn.

### A.    Intervention as of Right Under Rule 24(a)

Intervention as a matter of right under Rule 24(a) turns on four factors: (1) timeliness; (2) whether the applicant claims a protectable interest relating to the property or transaction that is the subject of the action; (3) whether disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by other parties.  *See* Fed. R. Civ. P. 24(a); *Fund for Animals Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003).  In addition to satisfying these criteria, a party seeking to intervene as of right must establish Article III standing.  *Fund for Animals*, 322 F.3d at 731; see also *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009); *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 308 (D.D.C. 2011) (hereinafter "CBD v. EPA"); *In re ESA Litig.*, 270 F.R.D. at 4.  "Because a prospective intervenor's Article III standing presents a question going to this Court's jurisdiction, the Court must address standing before considering the four-part test for evaluating intervention as of right."  *In re ESA Litig.*, 270 F.R.D. at 4 (citing *Fund for Animals*, 322 F.3d at 732; *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)).

8

In *Lujan v. Defenders of Wildlife*, the Supreme Court explained that "the irreducible constitutional minimum of standing contains three elements:" (1) an injury-in-fact that is (a) concrete and particularized and (b) actual and imminent, (2) causation, and (3) redressability.  504 U.S. 555, 560 (1992). This Court applied the *Lujan* test in considering the previous motion to intervene in this MDL.  See *In re ESA Litig.*, 270 F.R.D. 1.  This Court found that TRC had identified a potential injury; specifically, if FWS listed a particular species of salamander encompassed in the litigation, it could precipitate restrictions on the use of TRC's land.  270 F.R.D. at 5. However, the Court found that TRC:

> failed to satisfy the causation and redressability prongs of the Article III standing test.  TRC's alleged injury is based entirely on the potential substantive outcome of the FWS' listing determination for the [salamander], which is not before this Court.  The case before this Court deals only with FWS' alleged failure to complete a preliminary step in the listing process within the time period required by law.  Because this Court will issue no order directly impacting TRC's use of its property, TRC's claims of injury from restrictions on its property use and business operations bear no relation to the present action.

*Id.*  The same is true here.  Safari Club asserts that it and its members have an interest in "the hunting and sustainable use conservation of" the greater sage grouse, New England cottontail, and lesser prairie chicken.  SCI Mem. at 2. As SCI notes, conservation and recreation interests have been accepted as a basis for demonstrating injury-in-fact.  *National Wildlife*

*Federation v. Hodel*, 839 F.2d 694, 704 (D.C. Cir. 1988).

However, SCI cannot demonstrate either causation or

redressability.  SCI's alleged injury is based entirely on "the

possible substantive outcome" of the FWS' listing determination

of the three species.  But that substantive outcome is not before

this Court.  Rather, the settlement agreements deal only with

FWS' failure to *make* the determinations.  The agreements require

that FWS determine whether or not to list the species within the

next several years, not to reach any particular result.

Guardians Agreement ¶ 2 and at Ex. B; CBD Agreement § B.3.[4]

Accordingly, SCI's injury is not fairly traceable to any judgment

in this Court in the present action.  By extension, therefore,

SCI's injury is also unlikely to be redressed by any decision by

this Court in this litigation.  See *In re ESA Litig.*, 270 F.R.D.

at 5; see also *CBD v. EPA*, 274 F.R.D. at 311 (denying aircraft

manufacturers' motion to intervene in action which sought to

compel EPA to act on their petitions to regulate greenhouse gases

because the Court's decision would only "require EPA to *make* the

---

[4]      Specifically, under the proposed settlements, FWS
agrees to issue a proposed listing rule or finding that the
listing is not warranted for one distinct population segment
("DPS") of the greater sage grouse by the end of fiscal year
2013, and all other DPS by the end of fiscal year 2015.
Guardians Agreement ¶ 2; CBD Agreement § B(3.c., e).  For the New
England cottontail, FWS agrees to issue a proposed rule or not-
warranted finding by the end of fiscal year 2015, and for the
lesser prairie chicken, FWS will make the same determination by
the end of fiscal year 2012.  CBD Agreement § B(3.e); Guardians
Agreement at Ex. B.

determination (as to whether greenhouse gases endanger public health), not to reach any particular result.").[5]

SCI argues that its motion to intervene is distinguishable from TRC's. Specifically, SCI claims it has standing under the "relaxed . . . requirements" of the procedural rights standing doctrine, an argument not raised by TRC. SCI Mem. 11; SCI Reply 8, n.5. For the reasons below, the Court finds SCI does not have standing under the procedural rights doctrine.

The procedural rights doctrine holds that where a proposed party's concrete interests are harmed when an agency fails to follow a legally required procedure for a decision, the proposed party faces a lesser burden of showing redressability. In this

---

[5] SCI claims that the settlement agreements do more than establish deadlines; they remove FWS' discretion "to determine that the listings" of the three species at issue "continue to be warranted but precluded." SCI Mem. at 12. SCI does not link this claim to the causation requirement for Article III standing, and the Court finds that FWS' commitment to consider the three species is not "substantially probable" to cause its injury – *i.e.*, its inability to hunt the species. *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 667 (D.C. Cir. 1996) (citations omitted). For that commitment to result in the harm identified by SCI, several contingencies would have to occur: the FWS would have to determine that each species, including the distinct population segments hunted by SCI members, qualify for listing; FWS would have to initiate a rulemaking (in which SCI would be free to participate by way of notice and comment); and that rulemaking would have to result in a finding that each species and its distinct population segments are either endangered or so threatened as to preclude hunting. The Court finds "the intervening contingency of the endangerment finding prevents the [recreational] harm asserted by movant[] from being 'fairly . . . traceable'" to the settlement agreement. *CBD v. EPA*, 274 F.R.D. at 310 (quoting *Lujan*, 504 U.S. at 560).

situation, the fact that the agency could reach the same outcome after following the required procedures is not ordinarily a basis for denying standing. *See Lujan*, 504 U.S. at 572 n.7.  As the D.C. Circuit has emphasized, a party "may have standing to challenge the failure of an agency to abide by a procedural requirement only if that requirement 'was designed to protect some threatened concrete interest'" of that party. *Florida Audubon*, 94 F.3d at 667 (quoting *Lujan*, 504 U.S. at 573, n.8).

Moreover, the procedural rights doctrine "does not – and cannot - eliminate any of the 'irreducible' elements of standing[.]" *Id*.  Accordingly, the party asserting procedural standing must demonstrate causation, by showing "not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the [party's] own interest." *Id.* at 664-65.

SCI argues that FWS has failed to follow a procedural requirement.  It claims FWS has "modif[ied] its priority ranking system without engaging the public" by providing notice and the opportunity to comment.  SCI Reply 13.  SCI points out that the settlement agreements require FWS to make determinations on whether or not to list warranted-but-precluded species over the next several years, and provides dates certain by which determinations for each species will be made.  SCI claims that

these dates certain do not always follow the "listing priorities"
FWS assigns to each candidate species in its annual CNOR.  SCI
Reply at 12.  For example, SCI points out that under the
settlement "the Jollyville Plateau Salamander, which [FWS] has
given a priority of 8, must be addressed by next year, while the
Kentucky Arrow darter, which [FWS] has designated a ranking of 3
(a higher priority), must be addressed by 2015." *Id.* at 15
(citing 2010 CNR, 75 Fed. Reg. at 69,224; 69,249).  SCI claims
that by entering into the settlement agreement, FWS has modified
its priority ranking system, which it may not do without notice
and comment.  SCI Mem. at 13-17.  For the reasons that follow,
SCI is incorrect.

The ESA requires FWS to establish a system for determining
the priorities for making listing determinations.

> The Secretary shall establish, and publish in the Federal
> Register, agency guidelines to insure that the purposes of
> [the ESA] are achieved efficiently and effectively.  Such
> guidelines include, but are not limited to –
> ...
> (3) a ranking system to assist in the identification of
> species that should receive priority review . . .

16 U.S.C. § 1533(h).  While the statute provides that
establishment of the guidelines themselves shall be subject to
notice and comment, it does not require that FWS must provide
notice and comment before applying the guidelines to any species.
Moreover, the statute requires FWS to establish guidelines to
include "a ranking system to assist in the identification of

13

species that should receive priority review." *Id.* It does not prohibit FWS from reviewing species in any order but the order set forth in the rankings. Indeed, FWS clearly explained it is not bound by the priority listings when it adopted the guidelines mandated by section 1533(h) nearly 30 years ago. FWS stated: "the priority systems presented must be viewed as guides and should not be looked upon as inflexible frameworks for determining resource allocations." Endangered and Threatened Species Listing and Recovery Priority Guidelines, 48 Fed. Reg. 43,098 (Sept. 21, 1983). "It should be recognized that the setting of listing priorities is an intermittent, rather than a continuous, activity, and that information developed on a species believed to have a high priority may indicate that a lower priority is justified, but that this situation would not necessarily preclude its being listed[.]" *Id.* at 43,099. As the statute and the guidelines make clear, the priority systems are one tool, among others, designed to assist FWS in carrying out its functions under the ESA. The rankings do not create any requirement - procedural or otherwise - that the agency consider the species in the order they are ranked. Because SCI has not shown that any portion of the settlement agreement will cause the

FWS to violate or ignore a procedural requirement, it cannot demonstrate procedural standing.[6]

SCI has failed to satisfy the requirements for Article III standing, including procedural standing.  Thus, it may not intervene as of right in these consolidated cases.  *See CBD v. EPA*, 274 F.R.D. at 312 (noting that without standing to intervene, a plaintiff may not intervene as of right, and further noting "that much of the standing analysis above also applies to the question of whether movants have a protectable interest in the outcome of this action within the meaning of Rule 24(a)(2)." (citing *In re ESA Litig.*, 270 F.R.D. at 5)).

---

[6]     Even assuming FWS violated a required procedure, which it did not, SCI cannot establish procedural standing because the procedure SCI identifies was not "designed to protect" its "threatened concrete interest."  *Lujan*, 504 U.S. at 573, n.8. SCI has not shown that the procedure by which the greater sage grouse, the New England cottontail, and the lesser prairie chicken remain indefinitely on the candidate list was designed to protect SCI's stated interest in hunting the species.  In *Lujan* the Supreme Court gave examples of procedures designed to protect a party: the requirement for a hearing prior to a denial of a license application is designed to protect the applicant, and the requirement that a federal agency prepare an environmental impact statement before conducting a major federal action such as constructing a dam is designed to protect neighbors of the proposed dam.  *Id.* at 572.  SCI points to no indication, in the ESA or elsewhere, that the FWS' procedure for issuing warranted-but-precluded findings and maintaining a list of candidate species indefinitely is designed to protect SCI members' interest in hunting the species.  To the contrary, the 2010 CNOR notes that the FWS maintains a list of candidate species for "a variety of reasons," including promotion of public awareness that the species may be in danger, and information gathering regarding these species.  *See* 2010 CNOR, 75 Fed. Reg. 69,222 - 223. Hunting is not among the reasons listed.

**B.    Permissive Intervention**

In the alternative, SCI moves for permissive intervention under Rule 24(b).  Under Rule 24(b)(2), a prospective intervenor must demonstrate (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.  *Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  If a prospective intervenor satisfies these criteria, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and may also consider "whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal questions presented." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quoting *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).  Because permissive intervention is granted solely at the discretion of the district court, the Court may deny permission to intervene even if the applicant satisfies the necessary criteria.  *Nat'l Children's Center*, 146 F.3d at 1048.

Assuming arguendo that SCI's motion to intervene satisfies the first three criteria, the Court turns to whether the intervention will lead to prejudice or delay, on the one hand, or

16

would significantly contribute to the just and equitable adjudication of the issues, on the other.[7]  It is on these grounds that the Court concludes that SCI should not be permitted to intervene.

First, the Court finds that allowing SCI to intervene could lead to undue delay.  The settlement agreements are currently pending before the Court.  SCI's stated purpose in seeking to intervene is, in part, to protect its interests by delaying any determination on the greater sage grouse, the New England cottontail, and the lesser prairie-chicken.  SCI Mem. at 2, 10, 11.  The Court is unwilling to put SCI in a position to further delay resolution of the case.

Second, the Court finds that allowing SCI to intervene may prejudice FWS' ability to comply with the settlement agreements. The agreements contemplate that FWS will have the resources to begin work on issuing 90 day and 12 month findings in fiscal year 2011, as well as beginning work on addressing the backlog of candidate species immediately.  Guardians Agreement at 5-6, Ex. B; CBD Agreement 4-6.  The settlements further contemplate that

---

[7]     As this Court noted in the prior motion to intervene, standing is related to the issue of subject matter jurisdiction. *In re ESA Litig.*, 270 F.R.D. at 6, n.5.  Although intervenors of right must demonstrate standing, it is unclear in this Circuit whether standing is also required for permissive intervention. *Id.*, citing *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31-32 (D.C. Cir. 2000).  As explained above, SCI has not demonstrated Article III standing to intervene in this case.

FWS will have the resources to complete this work because, *inter alia*, Guardians and CBD will significantly limit new petitions and conclude existing litigation against FWS.  Guardians Agreement at 5, 8-10, 11-12;  CBD Agreement 6-8.  As long as this multi-district litigation continues, it consumes resources and places the ultimate goals of the agreement in jeopardy.  In other words, regardless of the merits of SCI's position, the mere fact of its intervention will force the FWS to continue to litigate, consuming scarce resources which may result in FWS' inability to honor its obligations under the settlement agreements.  The Court declines to exercise its discretion to permit intervention under these circumstances.

On the other hand, denying SCI's motion to intervene will not prejudice SCI because "intervening in this essentially procedural matter is not an appropriate mechanism to protect its substantive interests." *In re ESA Litig.*, 270 F.R.D. at 6.  SCI "can best serve its stated interests by participating in the administrative review process for FWS' eventual listing decision[s].  If the FWS ultimately finds" that the greater sage grouse, the New England cottontail, and/or the lesser prairie chicken warrant listing, SCI "can then file its own lawsuit to protect [its] interests directly." *Id*. at 6.  "While the Court is aware that it is 'not enough to deny intervention . . . because the applicants may vindicate their interests in some

later, albeit more burdensome, litigation,'" *Id.* (quoting *Natural Res. Def. Council v. Costle,* 561 F.2d 904, 910 (D.C. Cir. 1977)) the consolidated cases before this Court offer SCI "no opportunity to effectively vindicate its interests." *Id.*

Finally, the Court concludes that SCI's intervention in the case will not "significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle*, 714 F. Supp. 2d at 18 (quoting *H.L. Hayden Co.*, 797 F.2d at 89). Judge Kennedy of this Court considered a substantively identical issue earlier this year in *CBD v. EPA*, 274 F.R.D. 305. In that case, CBD brought action against the Environmental Protection Agency seeking to compel it to respond to petitions urging the EPA to regulate greenhouse gas emissions. A collection of movants representing the aircraft industry sought to intervene in the litigation, seeking to delay or prevent EPA from acting on the petitions. Denying the motion for permissive intervention, Judge Kennedy found:

> Movants argue persuasively that they have substantial expertise . . . regarding . . . aircraft and the engines thereof. . . . [H]owever, aircraft and their engines are not at issue in this case. Rather, the Court has been asked to determine whether EPA has an enforceable obligation to make the findings sought by plaintiffs and, if so, whether it has breached that obligation. With regard to *these* questions, movants . . . fail to demonstrate an ability to contribute to the full development of the factual and legal issues presented.

*Id.* at 313 (citations omitted)(emphasis in original). The same is true in this case. The Court has no doubt that SCI and its

members have both expertise and experience regarding the greater sage grouse, the New England cottontail, and the lesser prairie-chicken, particularly as pertains to hunting those species. However, the substantive question whether or not these species should be listed as threatened or endangered is not at issue in these consolidated cases or in the settlement agreements. The only question before this Court is whether the FWS may agree to make those determinations in the timetables proposed. The Court concludes that SCI and its members' "substantial experience and [] expertise" on the species "have no bearing on the legality of the timetable process here in dispute." *Envtl Def. Fund v. Thomas*, Case. No. 85-1747, 1985 WL 6050, at *6-7 (D.D.C. Oct. 29, 1985) (denying permissive intervention where industry groups sought to intervene in a suit over the timing in which EPA would promulgate regulations).

Because the Court concludes that intervention has the potential to unduly delay and prejudice the original parties, and because the Court further concludes that no benefit will flow from permitting SCI to intervene, the Court **DENIES** SCI's request for permissive intervention.

## II. CONCLUSION

For the reasons states herein, movant's motion to intervene is **DENIED.** Accordingly, SCI's motion for leave to intervene

without filing responsive pleadings, Doc. 39-7, is **DENIED AS**

**MOOT**.   An appropriate Order accompanies this Memorandum Opinion.

      **SO ORDERED.**

Signed by:     **Emmet G. Sullivan**
                **United States District Court Judge**
                **September 9, 2011**